UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL COUSIN,

                               Plaintiff,

            v.

THE CITY OF ROCHESTER, JOSHUA WOODWARD,
ALEC KONRAD, JOHN SOURES, RYAN
CASTRACHINI, JOEL HASPER, "JOHN DOE POLICE
OFFICERS 1-20" (names and number of whom are
unknown at present), JTJ EAST INC doing business as
BRASS BAR & LOUNGE, PETER BANDULJ,

                               Defendants.

**INDEX**

Case No.

Monroe County
Index No. E2023005699

Index of Exhibits to the Notice of Removal:

       **Exhibit A**: Summons and Complaint electronically filed with the Monroe County Clerk
on or about May 31, 2023.

Date:  June 23, 2023

                           LYNDA S. KINGSLEY
                           Corporation Counsel

                By:     s/Patrick Naylon_____
                        PATRICK B. NAYLON, ESQ., of Counsel
                        *Attorneys for Defendants*
                        30 Church Street, Room 400A
                        Rochester, New York 14614
                        (585) 428-6906
                        Patrick.naylon@cityofrochester.gov

To:   ROTH & ROTH LLP
       Elliot Dolby-Shields, Esq.
       *Attorneys for Plaintiff*
       192 Lexington Avenue, Suite 802
       New York, New York 10016

MONROE COUNTY CLERK'S OFFICE

THIS IS NOT A BILL. THIS IS YOUR RECEIPT.

Receipt # 3449877

Book    Page    CIVIL

Return To:
ELLIOT DOLBY-SHIELDS
192 Lexington Avenue, Suite 802
New York, NY 10016

No. Pages:  27

Instrument: EFILING INDEX NUMBER

Control #:        202306010522
Index #:          E2023005699

Date: 06/01/2023

Cousin, Michael

Time: 12:28:37 PM

The City of Rochester
Woodward, Joshua
Konrad, Alec
Soures, John
Castrachini, Ryan

| | | |
|---|---|---|
| State Fee Index Number | $165.00 | |
| County Fee Index Number | $26.00 | |
| State Fee Cultural Education | $14.25 | |
| State Fee Records | $4.75 | Employee: RR |
| Management | | |
| Total Fees Paid: | $210.00 | |

State of New York

MONROE COUNTY CLERK'S OFFICE
WARNING – THIS SHEET CONSTITUTES THE CLERKS
ENDORSEMENT, REQUIRED BY SECTION 317-a(5) &
SECTION 319 OF THE REAL PROPERTY LAW OF THE
STATE OF NEW YORK. DO NOT DETACH OR REMOVE.

JAMIE ROMEO

MONROE COUNTY CLERK



# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

| | |
|---|---|
| MICHAEL COUSIN,<br><br>                             Plaintiff,<br><br>           -against-<br><br>THE CITY OF ROCHESTER, JOSHUA WOODWARD, ALEC KONRAD, JOHN SOURES, RYAN CASTRACHINI, JOEL HASPER, "JOHN DOE POLICE OFFICERS 1-20" (names and number of whom are unknown at present), JTJ EAST INC doing business as BRASS BAR & LOUNGE, PETER BANDULJ,<br><br>                         Defendants. | **SUMMONS**<br><br>Index No.:<br><br>The basis of venue is:<br>Location of the incident<br><br>Plaintiff designates Monroe County as the place of trial. |

**To the above named Defendants:**

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: New York, New York
         May 31, 2023

                              Yours, etc.,

                              *Elliot Shields*

                              ROTH & ROTH, LLP.
                              ELLIOT SHIELDS, ESQ.
                              Co-counsel for Plaintiff
                              192 Lexington Ave, Suite 802
                              New York, New York 10016
                              (212) 245-1020

TO:
CITY OF ROCHESTER
CORPORATION COUNSEL
30 Church Street
Rochester, New York 14614

JOSHUA WOODWARD, ALEC KONRAD, JOHN SOURES, RYAN CASTRACHINI, JOEL HASPER, 185 Exchange Blvd., Rochester, New York 14614

1

JTJ EAST INC doing business as BRASS BAR & LOUNGE, 363 East Avenue, Rochester, NY 14604

PETER BANDULJ, 637 Harvest Dr, Rochester, NY 14626

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF MONROE

---

MICHAEL COUSIN,

|                                                        |                        |
|--------------------------------------------------------|------------------------|
|                                          Plaintiff,    | INDEX NO.:             |
|                                                        |                        |
|                        -against-                       | **VERIFIED COMPLAINT** |
|                                                        | **[JURY TRIAL DEMANDED]** |
| THE CITY OF ROCHESTER, JOSHUA WOODWARD,                |                        |
| ALEC KONRAD, JOHN SOURES, RYAN                         |                        |
| CASTRACHINI, JOEL HASPER, "JOHN DOE POLICE             |                        |
| OFFICERS 1-20" (names and number of whom are unknown   |                        |
| at present), JTJ EAST INC doing business as BRASS BAR  |                        |
| & LOUNGE, PETER BANDULJ,                               |                        |
|                                          Defendants.   |                        |

---

Plaintiff, by his attorneys, ROTH & ROTH, LLP, complaining of the defendants, respectfully allege as follows:

## I.    **PARTIES**

1.      Plaintiff MICHAEL COUSIN is a resident of the Rochester, New York.

2.      Defendant CITY OF ROCHESTER ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the RPD.

3.      Defendant CITY OF ROCHESTER ("CITY") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. Defendant CITY maintains the City of Rochester Police Department, a duly authorized police department, authorized to perform all functions of a police department. RPD acts as Defendant CITY's agent and Defendant CITY assumes the risks incidental to the maintenance of a police department and the employment of police officers.

3

4.     Defendants JOSHUA WOODWARD, ALEC KONRAD, JOHN SOURES, RYAN CASTRACHINI, JOEL HASPER and "JOHN DOE" ROCHESTER POLICE DEPARTMENT OFFICERS 1–20 (the names and numbers of which are currently unknown), were, at all times relevant to this Complaint, Police Officers with the RPD. At all relevant times, these defendants were acting within the scope of their employment with the CITY and RPD and under color of state law. They are sued in their individual capacities. John Doe RPD Officers are referred to collectively as "the RPD officers."

5.     Defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE (hereinafter "the bar"), was and is a New York Corporation authorized to do business in the State of New York with its principal place of business in Monroe County.

6.     At all relevant times, the bar was a public accommodation, and was prohibited from discriminating against its customers based on their religion pursuant to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.

7.     Defendant PETER BANDULJ was and is at all times the owner, member, employee, and agent of defendant JTJ EAST INC.

8.     At all times relevant herein, defendant PETER BANDULJ was acting in the course and scope of his duties and functions as owner, member agent, servant, and employee of defendant JTJ EAST INC and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties.

### III. JURISDICTION

9.     This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

4

10.     Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

11.     Plaintiff filed a timely Notice of Claim against the City, in compliance with the Municipal Law § 50.

12.     More than thirty (30) days have elapsed since service of said Notice of Claim was filed and the City has failed to pay or adjust the claim.

13.     This action was filed within a year and 90 days of the event that gives rise to plaintiff's causes of action under New York State law and plaintiff has complied with all of the statutory prerequisites for bringing this action.

## IV.  STATEMENT OF FACTS

14.     On June 19, 2022 at approximately 12:00 a.m. - 1:00 a.m., plaintiff Mr. Cousin and his girlfriend entered Brass Bar & Lounge, 363 East Avenue, Rochester, NY (hereinafter "the bar").

15.     Mr. Cousin is a devout Muslim and always wears a religious headwrap.

16.     When he entered the bar, Mr. Cousin was wearing a religious headwrap.

17.     When Mr. Cousin and his wife entered the bar, a security guard named Romel Libett searched him and his wife, including using a metal detector to check them for weapons.

18.     When he searched Mr. Cousin and his wife, Mr. Libett did not find any weapons or contraband of any kind.

19.     After searching them, Mr. Libett permitted Mr. Cousin and his wife to pay the cover fee and enter the bar.

20.     At no point prior to entering the bar did Mr. Libett or anyone else say anything to Mr. Cousin about a dress code or Mr. Cousin's religious headwrap.

21.     After entering the bar, Mr. Cousin purchased a drink for his wife and himself, and then they sat at a table alone in the back of the bar.

22.     After several minutes, Mr. Libett approached Mr. Cousin and informed him that his boss, defendant PETER BANDULJ, said that Mr. Cousin had to either remove his headwrap or leave the bar.

23.     Mr. Cousin informed Mr. Libett that he was a Muslim and that he was wearing a religious headwrap, and requested to speak with defendant BANDULJ.

24.     Mr. Libett then informed defendant BANDULJ that Mr. Cousin explained that it was a religious headwrap and had asked to speak with him.

25.     Defendant BANDULJ told Mr. Libett that he did not care that Mr. Cousin was a Muslim and that he did not care about his religious headwrap, and told Mr. Libett to "fight" Mr. Cousin and forcibly remove him from the bar.

26.     Mr. Libett informed defendant BANDULJ that he was not going to "fight" Mr. Cousin.

27.     Thereafter, other security guards informed Mr. Cousin that BANDULJ demanded that he remove his religious headwrap.

28.     Mr. Cousin again requested to speak with BANDULJ to explain that it was a religious headwrap and that he could not remove it.

29.     Defendant BANDULJ then falsely reported to the police that Mr. Cousin had a gun.

30.     Defendant BANDULJ knew that his claim that Mr. Cousin had a gun was false when he called the police.

31.     Neither Mr. Libett nor any other security guard ever informed the police that Mr. Cousin was suspected to have a gun.

6

32.     All of the objective facts known to the police demonstrated that defendant BANDULJ's claim that Mr. Cousin had a gun was false.

33.     Nevertheless, at the request of defendant BANDULJ, defendants JOSHUA WOODWARD, ALEC KONRAD, JOHN SOURES, RYAN CASTRACHINI, JOEL HASPER and other "John Doe" officers entered the bar and immediately seized Mr. Cousin and threw him onto the ground, without warning or justification.

34.     Prior to grabbing Mr. Cousin, slamming his body onto the ground and striking him multiple times, defendants JOSHUA WOODWARD, ALEC KONRAD, JOHN SOURES, RYAN CASTRACHINI, JOEL HASPER made a plan for how they were going to immediately grab him and use force against him without warning.

35.     Thereafter, without warning, HASPER approached Mr. Cousin from behind, grabbed him by the arms and slammed his body onto the ground, without cause or justification.

36.     HASPER falsified his account of the interaction in official police paperwork; including falsely reporting that "security" informed him that Mr. Cousin had a gun, and falsely reporting that Mr. Cousin resisted arrest and refused to comply with police commands. HASPER also falsely reported that Mr. Cousin, "made terroristic type threats to return and shoot up Brass Bar if he was arrested. This comment was made to security and appears to be the reason security believed he had a gun."

37.     At no time did Mr. Libett or any other security guard ever tell HASPER or any other RPD officer that Mr. Cousin threatened to "shoot up Brass Bar if he was arrested."

38.     SOURES also used force against Mr. Cousin without justification and falsified official police reports to justify his unlawful use of force.

7

39.     Without warning, SOURES approached Mr. Cousin from behind, grabbed him, placed him in a "bear hug", and then slammed his body onto the ground.

40.     SOURES falsified his account of the interaction in official police paperwork; including falsely reporting that prior to using force against Mr. Cousin, he spoke to Mr. Cousin and requested that he put his hands behind his back; and falsely reporting that Mr. Cousin resisted arrest and refused to comply with police commands.

41.     KONRAD also used force against Mr. Cousin without justification and falsified official police reports to justify his unlawful use of force.

42.     Without warning, KONRAD approached Mr. Cousin from behind, grabbed him, delivered at least three knee strikes to Mr. Cousin's left thigh, then picked up Mr. Cousin by the legs and slammed his body onto the ground; after Mr. Cousin was on the ground, KONRAD then placed his full body weight on Mr. Cousin's legs, to inflict pain; none of the force was justified.

43.     KONRAD falsified his account of the interaction in official police paperwork; including falsely reporting that Mr. Cousin resisted arrest and refused to comply with police commands.

44.     After he was on the ground, defendants JOSHUA WOODWARD, ALEC KONRAD, JOHN SOURES, RYAN CASTRACHINI, JOEL HASPER all participated in his arrest by placing handcuffs on his wrists in an unreasonably tight manner.

45.     After Mr. Cousin was handcuffed and arrested, Defendant BANDULJ ordered Mr. Libett to falsely inform the police that Mr. Cousin had a gun and/or that Mr. Cousin had threatened to shoot him.

46.     Mr. Libett refused to lie to the police and instead told them that he had searched Mr. Cousin when he entered the bar and that he did not have a gun. He also never informed the police that Mr. Cousin threatened to shoot him.

47.     WOODWARD falsified official police paperwork to charge Mr. Cousin with a crime; and specifically omitted the fact that Mr. Libett informed the officers that Mr. Cousin did not have a gun, that Mr. Libett never told the police that Mr. Cousin threatened to shoot him, and that defendant BANDULJ had lied to the police.

48.     The defendant police officers falsely charged Mr. Cousin with trespass, PL 140.50.

49.     Mr. Cousin was detained in police custody for approximately an hour and half.

50.     Mr. Cousin had to make approximately three appearances in criminal court before all the false charges were dismissed in their entirety on or about September 2, 2022.

51.     At no time did plaintiff ever have a gun; at no time did plaintiff ever threaten to shoot Mr. Libett or anyone else; at no time did any security guard ever claim that plaintiff had a gun; at no time did Mr. Libett or any other security guard tell the plice that Mr. Cousin threatened to shoot them.

52.     Instead, defendant BANDULJ falsely reported to the police that plaintiff had a gun and/or that he had threatened to shoot one of the bouncers in retaliation for Mr. Cousin refusing to remove his religious headwrap.

53.     At no time did plaintiff trespass inside of the bar; instead he was invited, allowed and permitted to enter the bar after entering through security and being searched by hand and with a metal detector; and the only reason the owner, defendant BANDULJ, ever asked him to leave was because he was wearing a religious headwrap, which constitutes a violation of Title II of the Civil Rights Act of 1964.

9

54.     At no time did plaintiff commit any act that a reasonable and properly trained police officer could have believed provided them with reasonable or probable cause to seize and arrest plaintiff, or justification to use any force against plaintiff whatsoever.

## V.  CLAIMS FOR RELIEF

## A. FEDERAL CLAIMS

## FIRST CLAIM FOR RELIEF:

**(Municipal Liability under *Monell*; Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Fourth and Fourteenth Amendment Rights)**

55.     All preceding and subsequent paragraphs are incorporated by reference.

56.     All of the wrongful acts or omissions complained of herein against Plaintiff and were carried out by the individually named and unnamed RPD officers pursuant to: (a) formal policies, rules, and procedures of Defendant CITY related to unlawfully using force against individuals without any objectively reasonable basis; (b) actions and decisions by Defendant CITY's policymaking agents in directing / ordering RPD officers to use force against individuals without any lawful basis and without first attempting to effectuate arrests without using force; (c) customs, practices, and usage of the RPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by CITY policymaking officials; (d) Defendant CITY's deliberate indifference to Plaintiff's' rights secured by the Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the CITY's longstanding failure to train, supervise, and discipline RPD officers on the lawful and appropriate amount of force that can be used when effectuating an arrest.

57.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## SECOND CLAIM FOR RELIEF

### (42 U.S.C. § 1983; Excessive Force; against KONRAD, SOURES, HASPER)

58.     All preceding and subsequent paragraphs are incorporated by reference.

59.     Defendants' actions towards Plaintiff constitutes excessive force in violation of 4th and 14th Amendments of the United States Constitution and 42 U.S.C. § 1983.

60.     Defendants used force against plaintiff that was unjustified and objectively unreasonable, taking into consideration the facts and circumstances that confronted them.

61.     The types and levels of force defendants used against plaintiff were in contravention of, or inconsistent with, related RPD policies and/or training.

62.     As a result of the acts and omissions of the defendant RPD officers, defendants deprived plaintiff of federal, state, and/or other legal rights; caused plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused plaintiff to expend costs and expenses; and/or otherwise damaged and injured plaintiff.

63.     The actions of the individual defendants were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

64.     As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## THIRD CLAIM FOR RELIEF

### (42 U.S.C. § 1983; First Amendment Infringements, Including First Amendment Retaliation; All Individual Defendants)

65.     All preceding and subsequent paragraphs are incorporated by reference.

66.     In committing the acts and omissions complained of herein, defendants acted under color of state law to deprive Plaintiff of the rights protected by the First Amendment to the United States Constitution.

67.     Defendant BANDULJ falsely reported to the police that Mr. Cousin had a gun, and therefore was a willing participant in joint activity with the State or its agents to cause Mr. Cousin to be falsely arrested because he was wearing a religious headwrap, in violation of his constitutional and statutory rights.

68.     Defendants (a) retaliated against plaintiff for wearing his religious headwrap, and (b) imposed restrictions on him for wearing his religious headwrap that violated Plaintiff's First Amendment rights, including, but not limited to subjecting plaintiff to excessive force, in arresting and prosecuting plaintiff, in selectively enforcing laws and regulations against plaintiff, and in otherwise violating plaintiff's rights and engaging in the acts and omissions complained of herein.

69.     Defendants engaged in those and other acts and omissions complained of herein in retaliation for plaintiff's First Amendment right to express his freedom of religion.

70.     Defendants engaged in the acts and omissions complained of herein in order to prevent plaintiff from continuing to engage in such protected right to express his freedom of religion by wearing a religious headwrap.

71.     The actions of the individual defendants were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

72.     As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## FOURTH CLAIM FOR RELIEF

### (42 U.S.C. § 1983; False Arrest; All Individual Defendants)

73.     All preceding and subsequent paragraphs are incorporated by reference.

74.     One or more of the Individual Defendants arrested plaintiff.

75. Defendant BANDULJ caused Mr. Cousin to be falsely arrested by falsely reporting to the police that Mr. Cousin had a gun, and therefore was a willing participant in joint activity with the State or its agents to cause Mr. Cousin to be falsely arrested because he was wearing a religious headwrap, in violation of his constitutional and statutory rights.

76. This arrest was made in the absence of a warrant for the arrest.

77. This arrest was made in the absence of probable cause for this arrest.

78. The Individual Defendants arrested plaintiff without having exigent circumstances for doing so.

79. There was no other authority for the arrest of plaintiff.

80. The plaintiff was conscious of this arrest.

81. The plaintiff did not consent to this arrest.

82. Individual Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

83. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer economic injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, economic damages, legal expenses and damages to her reputation and standing within her community.

84. As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## FIFTH CLAIM FOR RELIEF

**(42 U.S.C. § 1983; Malicious Prosecution Under Federal Law and Deprivation of Liberty Under the Fourth, Fifth, and Fourteenth Amendments; All Individual Defendants)**

85. All preceding and subsequent paragraphs are incorporated by reference.

86.     The Individual Defendants, acting in concert with each other, knowingly, willfully, and deliberately initiated, continued, or caused the initiation or continuation of, criminal proceedings against Plaintiff, and his loss of liberty.

87.     Defendant BANDULJ caused Mr. Cousin to be maliciously prosecuted by falsely reporting to the police that Mr. Cousin had a gun, and therefore was a willing participant in joint activity with the State or its agents to cause Mr. Cousin to be falsely arrested because he was wearing a religious headwrap, in violation of his constitutional and statutory rights. His claim that Mr. Cousin was "trespassing" was a false cover for his false claim that Mr. Cousin had a gun.

88.     The criminal proceedings terminated without a conviction.

89.     There was no probable cause for the commencement or the continuation of the criminal proceedings, and the Individual Defendants knew this.

90.     The individual Defendants acted with Malice.

91.     Individual Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

92.     By virtue of the foregoing, the Individual Defendants are liable under 42 U.S.C. § 1983, for the violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and for all resultant damages.

93.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## SIXTH CLAIM FOR RELIEF

**(42 U.S.C. § 1983; Due Process, Denial of Fair Trial and Deprivation of Liberty Under the Fourth, Fifth, and Fourteenth Amendments; All Individual RPD Defendants)**

94.     All preceding and subsequent paragraphs are incorporated by reference.

14

95.     The Individual Defendants, acting individually and in concert, deprived plaintiff of his clearly established constitutional right under the Fourteenth Amendment of the United States Constitution, to a fair trial.

96.     Specifically, the Individual Defendants fabricated paperwork claiming that plaintiff trespassed and committed other crimes, as detailed herein.

97.     By deliberately manufacturing false evidence and forwarding that fabricated evidence to prosecutors, these Defendants caused plaintiff to be arrested, detained, charged, and maliciously prosecuted in violation of her rights pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, to due process of law and to a fair trial, and are liable to Plaintiff under 42 U.S.C. § 1983, for compensatory and punitive damages.

98.     These Defendants performed the above-described acts under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Mr. Wilson's clearly established constitutional right to be free from deprivation of liberty without due process of law.

99.     Individual Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

100.     By virtue of the foregoing, the Individual Defendants are liable under 42 U.S.C. § 1983, for the violation of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and for all resultant damages.

101.     As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## SEVENTH CLAIM FOR RELIEF

### (42 U.S.C. § 1983; Failure to Intercede; All Individual Defendants)

102.    All preceding and subsequent paragraphs are incorporated by reference.

103.    The individual defendants all had an affirmative duty to intervene on plaintiff's behalf to prevent the violation of his constitutional rights by the other defendant RPD officers.

104.    The individual defendants failed to intervene on plaintiff's behalf despite having had realistic opportunities to do so.

105.    The individual defendants failed to intervene on plaintiff's behalf despite having substantially contributed to the circumstances within which plaintiff's rights were violated by their affirmative conduct.

106.    As a result of the aforementioned conduct of the individual defendants, plaintiff's constitutional rights were violated.

107.    The actions of the RPD Officers and BANDULJ were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

108.    As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**EIGHTH CLAIM FOR RELIEF**

**(Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a; Religious Discrimination; JTJ EAST INC doing business as BRASS BAR & LOUNGE, and BANDULJ)**

109.    All preceding and subsequent paragraphs are incorporated by reference.

110.    Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, ensures all persons should be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation without discrimination or segregation on the ground of race, color, religion, or national origin.

111.    The bar was a "public accommodation" because it was a facility ostensibly open to the general public.

112.  Public accommodations cannot discriminate against customers based on their religion.

113.  Public accommodations cannot turn customers away because of their religious appearance or dress, or demand that customers remove their religious dress or headwear to obtain goods or services.

114.  JTJ EAST INC doing business as BRASS BAR & LOUNGE, and BANDULJ discriminated against Mr. Cousin by demanding that he remove his religious headwrap.

115.  JTJ EAST INC doing business as BRASS BAR & LOUNGE, and BANDULJ discriminated against Mr. Cousin by falsely reporting to the police that he had a gun in retaliation for Mr. Cousin refusing to remove his religious headwrap.

116.  By discriminating against Mr. Cousin based on his religion, JTJ EAST INC doing business as BRASS BAR & LOUNGE, and BANDULJ caused Mr. Cousin to be unlawfully seized, falsely arrested, maliciously prosecuted, and subjected to excessive force.

117.  As a result, plaintiff is entitled to injunctive and declaratory relief.

**B. STATE LAW CLAIMS**

**NINTH CLAIM FOR RELIEF**

**(New York Law; Assault and Battery; All Defendants)**

118.  All preceding and subsequent paragraphs are incorporated by reference.

119.  Defendants assaulted and battered plaintiff by forcefully seizing him, slamming him on the pavement, striking him and handcuffing him in an excessively tight manner.

120.  Defendant BANDULJ caused Mr. Cousin to be assaulted and battered by the defendant police officers by falsely reporting to the police that Mr. Cousin had a gun, and therefore was a willing participant in joint activity with the State or its agents to cause Mr. Cousin to be

17

falsely arrested because he was wearing a religious headwrap, in violation of his constitutional and statutory rights.

121.     Plaintiff was not threatening the law enforcement officers or any other person at any time.

122.     Plaintiff was not committing any crime or violation.

123.     Plaintiff never had a gun or any other weapon or contraband.

124.     Plaintiff never resisted arrest in any way.

125.     By the aforedescribed conduct, defendants, their agents, servants and employees, acting within the scope of their employment, intentionally, willfully and maliciously battered plaintiff, when they, in a hostile and/or offensive manner struck plaintiff without his consent and with the intention of causing harmful and/or offensive bodily contact to the plaintiff and caused such battery.

126.     Defendants were at all times agents, servants, and employees acting within the scope of their employment by the defendant CITY and the RPD, which are therefore responsible for their conduct.

127.     The defendant CITY, as the employer of the individual RPD Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

128.     Defendant BANDULJ was at all times the owner, member, agent, servant and employee acting within the scope of his employment by the defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE, which is therefore responsible for his conduct.

129.     The defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE, as the employer of BANDULJ, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

18

130.     At no point during the incidents described herein did the circumstances necessitate or support the above applications of force utilized by the defendant RPD officers against Plaintiff.

131.     The actions of the defendant RPD Officers and BANDULJ were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

132.     As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

### TENTH CLAIM FOR RELIEF

### (New York Law; Unlawful Seizure / False Arrest; All Defendants)

133.     All preceding and subsequent paragraphs are incorporated by reference.

134.     The defendant RPD officers seized handcuffed and arrested Plaintiff.

135.     Defendant BANDULJ caused Mr. Cousin to be falsely arrested by falsely reporting to the police that Mr. Cousin had a gun, and therefore was a willing participant in joint activity with the State or its agents to cause Mr. Cousin to be falsely arrested because he was wearing a religious headwrap, in violation of his constitutional and statutory rights.

136.     The arrest was made in the absence of a warrant for the arrest.

137.     The arrest was made in the absence of probable cause for the arrest.

138.     The Defendant RPD officers arrested Plaintiff without having exigent circumstances for doing so.

139.     There was no other authority for the arrest of Plaintiff.

140.     Plaintiff was conscious of the arrest.

141.     Plaintiff did not consent to the arrest.

142.     Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

19

143.     The defendant RPD officers were at all times agents, servants, and employees acting within the scope of their employment by the Defendant City and the RPD, which are therefore responsible for their conduct.

144.     The Defendant City, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

145.     Defendant BANDULJ was at all times the owner, member, agent, servant and employee acting within the scope of his employment by the defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE, which is therefore responsible for his conduct.

146.     The defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE, as the employer of BANDULJ, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

147.     The actions of the defendant RPD Officers and BANDULJ were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

148.     As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## ELEVENTH CLAIM FOR RELIEF

### (New York Law; Malicious Prosecution; All Defendants)

149.     All preceding and subsequent paragraphs are incorporated by reference.

150.     By the actions described above, the CITY and RPD officers jointly and severally, acting in concert with each other and with additional persons for whose acts they are liable, initiated, continued and/or caused the initiation or continuation of, criminal proceedings against Plaintiff.

20

151.     Defendant BANDULJ caused Mr. Cousin to be maliciously prosecuted by falsely reporting to the police that Mr. Cousin had a gun, and therefore was a willing participant in joint activity with the State or its agents to cause Mr. Cousin to be falsely arrested because he was wearing a religious headwrap, in violation of his constitutional and statutory rights.

152.     By the actions described above, CITY and the RPD officers each violated good and accepted police practices.

153.     On September 2, 2022, the prosecution terminated in Plaintiff's favor.

154.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

155.     The RPD officers acted with actual malice.

156.     The CITY and RPD employed the RPD officers, who were at all times agents, servants, and employees acting within the scope of their employment with the CITY and the RPD, which are therefore responsible for their conduct.

157.     The CITY, as the employer of the individual RPD defendants, is responsible for their wrongdoing under the doctrine of respondeat superior.

158.     As a result of Defendants' impermissible conduct, Plaintiff was injured and harmed.

159.     The RPD officers' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

160.     Defendant BANDULJ was at all times the owner, member, agent, servant and employee acting within the scope of his employment by the defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE, which is therefore responsible for his conduct.

161. The defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE, as the employer of BANDULJ, is responsible for his wrongdoing under the doctrine of *respondeat superior*.

162. The actions of the defendant RPD Officers and BANDULJ were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

163. As a result, Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York

## TWELFTH CLAIM FOR RELIEF

**(New York Law; Negligence; JTJ EAST INC doing business as BRASS BAR & LOUNGE)**

164. All preceding and subsequent paragraphs are incorporated by reference.

165. Defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE was negligent in failing to have any policies in place to ensure that the religious rights of customers who wear religious headwraps were not violated by the bar's "dress code".

166. JTJ EAST INC doing business as BRASS BAR & LOUNGE had a duty to ensure that that its employees did not violate Title II of the Civil Rights Act of 1964 by discriminating against patrons who wear certain religious clothing, including religious headwear such as hijab, yarmulke, turban, or other religious appearance or dress.

167. JTJ EAST INC doing business as BRASS BAR & LOUNGE breached his duty to its patrons by failing to ensure that its employees did not discriminate against patrons based on their religious attire.

168. Plaintiff's injuries were a direct and proximate result of the JTJ EAST INC doing business as BRASS BAR & LOUNGE**'s** negligence.

22

INDEX NO. E2023005699

RECEIVED NYSCEF: 05/31/2023

169.    As a result, plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## THIRTEENTH CLAIM FOR RELIEF

### (New York Law; NYSHRL; JTJ EAST INC doing business as BRASS BAR & LOUNGE)

170.    All preceding and subsequent paragraphs are incorporated by reference.

171.    The New York State Human Rights Law provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, ... of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

172.    Defendant BANDULJ was at all times the owner, member, agent, servant and employee acting within the scope of his employment by the defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE.

173.    Defendant BANDULJ discriminated against Mr. Cousin based on his creed when he told him that he had to take off his religious headwrap or leave the bar.

174.    Defendant BANDULJ discriminated against Mr. Cousin based on his creed when he falsely told the police that he had a gun.

## FOURTEENTH CLAIM FOR RELIEF

### (New York Law; NYS Civil Rights Law § 40; JTJ EAST INC doing business as BRASS BAR & LOUNGE)

175.    All preceding and subsequent paragraphs are incorporated by reference.

176.    The New York Civil Rights Law § 40 prohibits denial of access to places of public accommodation on the basis of creed.

177. Defendant BANDULJ was at all times the owner, member, agent, servant and employee acting within the scope of his employment by the defendant JTJ EAST INC doing business as BRASS BAR & LOUNGE.

178. Defendant BANDULJ discriminated against Mr. Cousin based on his creed when he told him that he had to take off his religious headwrap or leave the bar.

179. Defendant BANDULJ discriminated against Mr. Cousin based on his creed when he falsely told the police that he had a gun.

180. At or before this action was commenced, notice of this action was served upon the New York State Attorney General.

181. As a result, Mr. Cousin is entitled to a statutory penalty of not less than one hundred dollars and not more than five hundred dollars.

182. In addition, Defendant BANDULJ and JTJ EAST INC doing business as BRASS BAR & LOUNGE shall be deemed guilty of a class A misdemeanor.

**WHEREFORE** and in light of the foregoing, plaintiff demands judgment on all claims for relief:

a. Empanel a jury;

b. Award compensatory and punitive damages;

c. The Plaintiff demands the foregoing relief jointly and severally against all of the defendants in an amount in excess of the jurisdiction of all lower Courts, except that the punitive damages demands are, as a matter of law, not recoverable against a municipality and therefore are not made against the City;

d.   Defendant BANDULJ and JTJ EAST INC doing business as BRASS BAR &
     LOUNGE shall be deemed guilty of a class A misdemeanor pursuant to NYS
     Civil Rights Law § 40;

e.   Award Plaintiff reasonable attorney's fees and costs, and interest pursuant to 42
     U.S.C. § 1988; and

f.   Such other and further relief as the court may deem just and proper.


Dated: New York, New York              Respectfully Submitted,
       May 31, 2023
                                        ROTH & ROTH, LLP.

                                        *Elliot Shields*

                                        _____
                                        Elliot Dolby Shields
                                        Counsel for Plaintiff
                                        192 Lexington Avenue, Suite 802
                                        New York, New York 10024
                                        (212) 425-1020

## ATTORNEY'S VERIFICATION

**ELLIOT DOLBY SHIELDS,** an attorney duly admitted to practice before the Courts of

the State of New York, affirms the following to be true under the penalties of perjury:

I am associated with Roth & Roth, LLP, attorneys for the Plaintiff, I have read the annexed

**VERIFIED COMPLAINT** and know the contents thereof, based on the files maintained in my

office, and the same are true to my knowledge, except those matters therein which are stated to be

alleged upon information and belief, and as to those matters I believe them to be true. My belief, as

to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent

information contained in my files. This verification is made by me and not the plaintiff because I

maintain my office in a different county from where the Plaintiff resides.


DATED: New York, New York
May 31, 2023


*Elliot Shields*
_____
ELLIOT DOLBY SHIELDS

26